**PALMER et al. v. KELBY et al.**

**BERDON et al. v. SAME.**

**In re NEW YORK INVESTORS, Inc.**

**No. 44.**

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1943.

882

Samuel Masia, of New York City, for Archibald Palmer et al.

Emanuel Becker and Javits & Javits, all of New York City, for David Berdon et al.

Ross W. Lynn and Frueauff, Burns & Ruch, all of New York City, for Charles H. Kelby, trustee.

Owen D. Nee and Root, Clark, Buckner & Ballantine, all of New York City (William P. Palmer, of New York City, of counsel), for Reconstruction Finance Corporation.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

### L. HAND, Circuit Judge.

This case comes before us upon appeals from two orders of the bankruptcy court, denying allowances; one, to accountants retained by one of the petitioning creditors in a bankruptcy proceeding; the other, to the attorneys and counsel of all the petitioning creditors. The circumstances out of which the claims arose were as follows. On July 14, 1933, certain creditors of a corporation, known as the New York Investors, Inc., filed a sequestration bill against that company, and the court appointed the appellee, Kelby, and another, receivers of its estate, and they went into possession. On October 13, 1933, four creditors of the company filed a petition in bankruptcy asking that it be adjudicated a bankrupt; and on October 31st, one of the four moved to be allowed to retain the appellants, Berdon & Company, a firm of accountants, to examine the books at the petitioner's own cost, with leave however, "in the event the above named alleged bankrupt is duly adjudicated," to apply "for compensation out of the said bankrupt estate in lieu and in place of any claim for compensation against the said petitioner." Between November 11th and December 28th the accountants did a large amount of work, embodied in a report submitted to the court under date of December 26, 1933; and it is for these services that they now ask an allowance. On October 23rd the other appellants, who are the attorneys and counsel of the petitioning creditors, procured an order under § 21, sub. a, Bankr.Act, 11 U.S.C.A. § 44, sub. a, for an examination of officers of the alleged bankrupt, and they conducted such an examination for several days. However, nothing more took place in the proceeding except some trivial interlocutory motions, and on February 5th, 1934, the case was marked off the calendar; and on October 31, 1942 it was entered on the docket as "Deemed abandoned without prejudice."

On December 31, 1934, three of the same four creditors who had filed the petition—together with a new creditor—filed an involuntary petition for reorganization of the New York Investors, Inc. under § 77B, 11 U.S.C.A. § 207; the debtor consented, and on January 7, 1935, the bankruptcy court approved the petition and appointed the receivers in the sequestration suit as trustees in reorganization. For nearly four years efforts were then made to prepare a satisfactory plan of reorganization, but they were all unsuccessful, and on December 14, 1938, an order was entered under subdivision c(8) of § 77B directing the debtor's liquidation. Kelby was elected the sole trustee and the estate has been wound up in that proceeding. The services for which the attorneys and counsel ask to be paid were those rendered in November and December, 1933, in the abandoned bankruptcy proceeding. The applications are made in the reorganization proceeding, the theory being as we understand it, that the services to be paid for helped in the liquidation of the debtor. The court refused any allowance to any of the applicants, and they appealed.

Both petitions stand on the same footing, and both must fail. Clearly they would not have succeeded, if they had been made in the bankruptcy proceeding itself, for there would have been no legal warrant for any allowance at that time except § 64, sub. a(1), 11 U.S.C.A. § 104, sub. a(1), and that presupposes an adjudication, which there never had been. If they are to be allowed, some place must be found for them in the reorganization proceeding. That had been brought under § 77B, and that section still controlled them, for so § 276, sub. c of the Chandler Act, 11 U.S.C.A. § 674, sub. c declared. If we

look to § 77B we find that subdivision k (5) provides that upon liquidation of the company § 64 shall govern priorities in the allowance of debts, and that must mean § 64, sub. a(1) as it stood when the applications were made. No words in § 64, sub. a(1) as it then stood covered expenses incurred for accountants unless they were "costs and expenses of administration." These would not serve even if the work of the accountants had induced the debtor to consent to reorganization as it did in December, 1934. Such services could not be part of the "costs and expenses of administration" of a reorganization begun a year later and not even authorized by statute until June, 1934. The accountants were limited under that clause to an application in the bankruptcy proceeding. Moreover, a glance at the order of November 9th, 1933, which gave the petitioning creditor leave to retain them makes it clear that this was the judge's purpose. Any allowance was to be conditional upon an adjudication, or a composition, or the like; and that necessarily meant some order in the proceeding itself. Nor do we mean to imply that such an expense could ever be a cost or expense of administration under § 64, sub. a(1), or indeed that any such allowance could have been made in a bankruptcy proceeding "pursuant to the rules of this Court": i.e., of the District Court for the Eastern District of New York; as the order prescribed.

The same considerations apply to the petition for an allowance to the attorneys and counsel, except that here the statute, § 64, sub. a(1), would have entitled them to a "fee," had they applied in the bankruptcy proceeding after adjudication. All this is so apparent that it is doubtful whether these appeals would have been pressed, had it not been for our decision in Feldblum v. Paramount Pictures, 2 Cir., 85 F.2d 596. That, however, concerned an altogether different situation. The petitioning creditors had filed an involuntary petition which the alleged bankrupt had countered by a voluntary adjudication. Against this the petitioning creditors protested, insisting, for various reasons not here relevant, that an adjudication should go on their petition as well. The district judge allowed them to press for an adjudication, and, although they never did so, we held that he had effectually protected them when he directed "that the voluntary adjudication should not prejudice any right obtained" by them; and for that reason we allowed them a fee under § 64, sub. b(3). True, we allowed it in the voluntary bankruptcy, and that was not strictly regular; we should have allowed it in the involuntary proceeding upon the theory that the judge's order had dispensed with the necessity of adjudication. However, that was mere matter of form, and the decision does not apply here, because the petitioning creditors abandoned the bankruptcy a year before they started the reorganization proceeding.

We have disposed of the case altogether upon our understanding of the relevant provisions of law, for it is of high importance that allowances out of a bankrupt estate should be jealously scrutinized. However, it so happens that in this instance the appellants have as little claim on our sympathy, as they have in law. The debtor was already in the hands of the court and needed no other care. There was no reason—absent § 77B—why it could not have been wound up quite as satisfactorily in the sequestration suit as in bankruptcy; a bankruptcy proceeding was quite unnecessary. After June, 1934, when the § 77B was passed, whatever had been done in bankruptcy had nothing to do with the debtor's consent to reorganization; at least there is not a syllable so to indicate. On what principle of equity we are to help the appellants out of the pocket of the creditors at large to pay for such superfluous activities, we do not understand.

Orders affirmed.